UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CONSTANCE WEISSBERG, | ) | CASE NO. 1:14-cv-1567 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CHALFANT MANUFACTURING CO., INC., et al., | ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion for summary judgment filed by defendant Chalfant Manufacturing Co., Inc. ("Chalfant"). (Doc. No. 37 ["Mot."].)[1] Plaintiff filed her opposition (Doc. No. 43 ["Opp'n"])[2] and defendant filed a reply (Doc. No. 48 ["Reply"]). For the reasons set forth herein, the motion is granted and this case is dismissed.

## I. PROCEDURAL BACKGROUND

This case arises out of the employment termination of Constance Weissberg ("Weissberg") by Chalfant on June 5, 2013. Weissberg initially filed suit on September 13, 2013 in Cuyahoga County Common Pleas Court against Chalfant, John Slaga, Robert Slaga and Gloria Slaga. After they were served with process, defendants moved to dismiss for improper venue or to transfer the case to the Medina County Court of Common Pleas. On December 4, 2013, the common pleas court ordered the case transferred. The docket of the Medina County Common

---

[1] Doc. No. 37 was filed as a motion to dismiss, which plaintiff opposed in cursory fashion. (*See* Doc. No. 40.) By order dated October 22, 2015, the Court converted the motion to dismiss to one for summary judgment and permitted plaintiff some limited discovery, after which plaintiff could file a supplemental opposition brief. (*See* Doc. No. 42.)

[2] There were also several deposition transcripts filed by plaintiff in support of her opposition brief. (Doc. Nos. 44, 45, 46, and 47.)

Pleas Court reflects that the case was filed there on December 19, 2013 as Case No. 13CIV1476. With the case set for jury trial on September 30, 2014, and dispositive motions due 30 days before trial, plaintiff voluntarily dismissed without prejudice on July 15, 2014. The instant case was filed in this Court on the same day. The Court has previously dismissed all claims except the single federal claim against Chalfant – a Family and Medical Leave Act ["FMLA"] claim brought under a theory of estoppel – as set forth in plaintiff's amended complaint. (Doc. No. 35 ["Compl."].)

## II. DISCUSSION

**A.     Facts**

Chalfant is a small family business owned by Gloria Slaga. (Doc. No. 44 ["G.Slaga Dep."] at 508.) Her husband, John Slaga, is the company president and runs the day-to-day operations. (*Id.*; Doc. No. 45 ["J.Slaga Dep."] at 545.) John's brother, Robert Slaga, is in charge of sales. (J.Slaga Dep. at 549.) In addition to the three Slaga family members just mentioned, Chalfant employed five people, including plaintiff, at its office in Brunswick, Ohio. (Doc. No. 47 ["C.Weissberg Dep."] at 701-02.) None of the employees had formal job descriptions. (*Id.* at 684-85.) Chalfant also operates a production facility in Elyria, Ohio, where it employed fewer than 20 people. In 2012-13, Chalfant employed no more than 23 employees at the two locations combined. (Doc. No. 46 ["R.Sandy Dep."] at 630.)

Plaintiff was employed by Chalfant, beginning in 1974 as a typist. She eventually advanced to working with computer systems, in particular (and exclusively), with RPG software. (C.Weissberg Dep. at 660-61, 673.) Plaintiff was diagnosed with a hiatal hernia in the late 1990s, but her doctor never suggested surgery until around June 2011. (*Id.* at 664.) She claims she received assurances from John Slaga that she would have a job when she returned from surgery.

(*Id.* at 667, 710.)[3] Even so, she decided to put off the surgery because Chalfant was undergoing a conversion to a new computer program. (*Id.* at 668.)[4] Eventually, her doctor told her that she could not further delay the surgery. (*Id.* at 664 – confirming that failure to have the surgery "could have been fatal" to her.)

Plaintiff was granted medical leave beginning on December 11, 2012. (*Id*. at 752.) She claims that, before she took the leave, she was assured by Rebecca Sandy, Chalfant's controller who did payroll, that her job was protected under the FMLA. Plaintiff admits that Rebecca Sandy was not an officer of Chalfant. (*Id.* at 711-13.)

Plaintiff returned to work on February 23, 2013. (C.Weissberg Dep. at 764.)[5] While she was on leave, Chalfant had converted from its older computer program (AS400) to a newer system (MAS500), a process that was underway and known to plaintiff well before the time she took her leave. This conversion resulted in the elimination of plaintiff's position as an RPG Programmer on the AS400 system. (*Id.* at 227-28; J.Slaga Dep. at 553.) On June 5, 2013, John Slaga advised plaintiff that, due to the elimination of her position, her employment with Chalfant was terminated. (C.Weissberg Dep. at 881-82.)

---

[3] At his deposition, John Slaga was asked if he knew about plaintiff's need for stomach surgery. (J.Slaga Dep. at 575.) He could not recall exactly when he learned about it, but stated that "it seemed like a couple of years that she said she had an elective thing that she needed done, but the doctor wanted her to lose weight." (*Id.* at 576.) Plaintiff confirmed that she was referred to a surgeon, who refused to do the surgery because she was obese. (C.Weissberg Dep. at 666.) In the end, because she "didn't like" that surgeon (*id.* at 668), she went in November 2012 to a different surgeon who advised that she have the surgery right away. (*Id.*. at 664.)

[4] Plaintiff testified that, around the same time, on October 29, 2012, John Slaga called her to his office and indicated that he had considered firing her, apparently due to some disrespect she had shown to Robert Slaga at a meeting on October 12, 2012. (C.Weissberg Dep. at 739-41.) She also admitted that she was an at-will employee, whom John Slaga could have fired at any time. (*Id.* at 740.) Plaintiff claimed the concern over her job being in jeopardy caused her enough emotional stress that she reported it to her doctor on October 31, 2012. (*Id.* at 742-44.)

[5] Plaintiff acknowledged that she was paid during her leave, under Chalfant's short-term disability policy. (C.Weissberg Dep. at 755-56.) She did not know that FMLA leave is unpaid leave. (*Id.* at 763-64.)

B.  **Summary Judgment Standard**

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina College v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether

reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

**C.**     **Analysis**

Benefits under the FMLA "are not available to all employees." *Tilley v. Kalamazoo Cnty. Road Comm'n*, 777 F.3d 303, 310 (6th Cir. 2015.) "Only an 'eligible employee' who works for an 'employer' – as both terms are defined under [the] Act – may obtain such benefits." *Id.* (citing *Kinds v. Ohio Bell Tel. Co.*, 724 F.3d 648, 652 (6th Cir. 2013)). To be an "eligible employee," one must have been employed "for at least 12 months" and for "at least 1,250 hours of service … during the previous 12-month period." 29 U.S.C. § 2611(2)(A). But the term "eligible employee" excludes anyone who works for an employer who employs fewer than 50 employees within 75 miles of the claiming employee's worksite, 29 U.S.C. § 2611(2)(B), the so-called "FMLA 50/75-Employee Threshold." *Tilley*, 777 F.3d at 310. *See also*

5

29 U.S.C. § 2611(4)(A)(i) (defining "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year").

Chalfant never employed enough people to fall under the FMLA. This is an important *undisputed* fact since courts typically construe FMLA requirements quite strictly. *See Pirant v. U.S. Postal Service*, No. 03 C 9383, 2006 WL 3590072, at * 8 (N.D. Ill. Dec. 7, 2006), *aff'd* 542 F.3d 202 (7th Cir. 2008), *cert. denied*, 558 U.S. 815, 130 S. Ct. 361, 175 L. Ed. 2d 21 (2009) (citing cases). "The FMLA's threshold numerical requirements represent Congress's careful balance of 'the demands of the workplace with the needs of employees to take leave for eligible medical conditions and compelling reasons,' and [a court] is in no position to second guess that informed and considered judgment." *Id*. (quoting *Hukill v. Auto Care, Inc.,* 192 F.3d 437, 441 (4th Cir. 1999)).

That said, the Sixth Circuit "recognizes that in *certain circumstances* equitable estoppel applies to employer statements regarding an employee's FMLA eligibility, preventing the employer from raising non-eligibility as a defense." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009) (emphasis added); *Tilley*, 777 F.3d at 311 (quoting *Dobrowski*). Therefore, even though plaintiff was not actually eligible for FMLA coverage, she can proceed with her FMLA retaliation claim[6] if she can first establish that Chalfant is equitably

---

[6] "There are two theories of FMLA liability against employers: the interference theory and the retaliation theory. The interference theory arises from 29 U.S.C. § 2615(a)(1), which states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter.' The retaliation theory arises from § 2615(a)(2), which provides that '[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.'" *Huffman v. Speedway LLC*, Nos. 14-1668, 14-2468, 2015 WL 3973325, at *4 (6th Cir. July 1, 2015). Plaintiff raises only the latter type of claim.

6

estopped from asserting the ineligibility defense. *Dobrowski*, 571 F.3d at 558 ("it is [plaintiff's] burden on summary judgment to produce evidence supporting [her] estoppel claim").

Thus, the analysis does not begin with whether plaintiff can establish a *prima facie* case of FMLA retaliation sufficient to withstand a summary judgment challenge. Instead, where, as here, plaintiff is not an "eligible employee" under the FMLA, she must first establish that Chalfant is estopped from asserting a defense of ineligibility. To avail herself of federal question jurisdiction under the FMLA solely on an equitable estoppel theory, plaintiff must meet "the requirements for equitable estoppel adopted by the Supreme Court in *Heckler* and discussed in the Restatement (Second) of Torts § 894." *Dobrowski*, 571 F.3d at 557 (citing *Heckler v. Cmty. Health Servs. of Crawford Cnty, Inc.*, 467 U.S. 51, 104 S. Ct. 2218, 81 L. Ed. 2d 42 (1984)). A plaintiff must show: "(1) a definite misrepresentation [by the party to be estopped] as to a material fact, (2) a reasonable reliance on the misrepresentation, and (3) a resulting detriment to the party reasonably relying on the misrepresentation." *Dobrowski*, 571 F.3d at 557; *Tilley*, 777 F.3d at 311. Plaintiff has failed to establish the three elements of estoppel.

Before turning to analysis of the instant case, it is helpful to examine those "certain circumstances" where the Sixth Circuit has discussed the sufficiency of estoppel evidence in the context of a motion for summary judgment

In *Dobrowski*, prior to plaintiff's medical leave, he received several assurances that the leave was covered by FMLA. The Sixth Circuit noted:

> To be sure, Jay Dee's actions amount to a definite misrepresentation of his eligibility. He applied for leave on an FMLA form and received written notice from his company that his leave was "pursuant to the Family and Medical Leave Act" and that he was an "eligible employee" even though he was, in fact, not covered by the Act.

*Dobrowski*, 571 F.3d at 557. Even so, the court of appeals concluded: "on the record before the court, Dobrowski cannot show that he detrimentally relied on this misstatement of his eligibility." *Id*. The court found "no evidence in the record to show that he 'change[d] his position' in reliance on the belief that his leave would be FMLA-protected[,]" faulting Dobrowski for "[a]t the very least" failing to "place[ ] an affidavit in the record stating that he would have forgone the surgery but for his belief that his job status was protected by the FMLA." *Id*. at 557-58. As a result, Dobrowski "ha[d] not raised a genuine dispute of a material fact as to his equitable estoppel argument, and Jay Dee is entitled to judgment as a matter of law. *Id.* at 559.

In *Tilley*, an employee's job was terminated for repeated failure to meet certain project deadlines, in particular one deadline that he missed because he had gone to the hospital with a suspected heart attack. The FMLA did not apply to the employer because it did not employ the requisite number of people. But the Sixth Circuit acknowledged its previous determination in *Dobrowski* that an employer otherwise not subject to the FMLA could be equitably estopped from raising the defense of non-eligibility. The court closely examined the district court record in light of the three elements of an estoppel claim, and concluded that there was a definite misrepresentation in the form of a letter and notice of FMLA eligibility, as well as an ambiguous and unqualified statement in the personnel manual suggesting that Tilley was an eligible employee under the FMLA. Tilley had also submitted an affidavit stating: "[h]ad I known that I was not entitled to FMLA, I would have had someone drive me to the Road Commission to complete the brief finishing touches to the # 3 job classification memo despite my illness in order to abide by the deadline or make other arrangements to have the completed document delivered before the deadline. I would not have done anything to put my job in

jeopardy." *Tilley*, 777 F.3d at 313. Contrasting these facts to those in *Dobrowski*, where there was no affidavit, the court concluded that this was "sufficient to create a material factual dispute on the reliance element of [Tilley's] estoppel claim" *Id.* (citing *Dobrowski*, 571 F.3d at 557-58.)

Plaintiff here alleges only that, in October 2012, Rebecca Sandy, a Chalfant employee, who served as the controller (R.Sandy Dep. at 629) and "worked with the payroll" but was admittedly not an officer of Chalfant (C.Weissberg Dep. at 711-12), told plaintiff that her job was protected by the FMLA (*id.* at 712). But Rebecca Sandy testified both that she had no authority to make decisions about entitlement to leave *and* that it was plaintiff who asked Sandy "to check about FMLA and she [plaintiff] knew we didn't have enough employees, but she wanted to check anyway." (R.Sandy Dep. at 630, 635.) Sandy told plaintiff: "[W]e don't – you have to have 50 employees." (*Id.*) In her opposition brief, plaintiff mischaracterizes this testimony (i.e., "she admitted at her deposition to having a conversation with [p]laintiff at the time [p]laintiff took leave"), apparently trying to suggest the existence of a material fact. (Opp'n at 400.) This offhand comment by Rebecca Sandy, assuming it was made, does not come even close to the quality of the evidence required by *Dobrowski* and *Tilley*.[7] But, even if the Court credits plaintiff's view of the first element of an equitable estoppel claim, the next question is whether it would have been reasonable for plaintiff to rely upon Rebecca Sandy's statement.

Plaintiff has not alleged, much less filed an affidavit to the effect, that, but for the alleged statement by Rebecca Sandy that her job was protected under FMLA, she would not have taken the leave to have the hernia surgery. *See Dobrowski*, 571 F.3d at 557 (where an FMLA estoppel claim was rejected because "[t]here is no evidence in the record to show that

---

[7] Notably, and unlike in *Dobrowski* and *Tilley*, the "Statement of Claim – Loss of Time Benefit" form that a Chalfant employee was required to complete when he or she received medical leave has not a single mention of the FMLA, a fact acknowledged by plaintiff. (*See* Doc. No. 37-8 & C.Weissberg Dep. at 853-54.)

9

[Dobrowski] 'change[d] his position' in reliance on the belief that his leave would be FMLA-protected."). In fact, at her deposition, plaintiff testified that the hernia surgery "wasn't an if/or. This could have been fatal to me." (C.Weissberg Dep. at 664.) And further, she testified: "I had to take the medical leave[.]" (*Id.* at 765.) In other words, defendant correctly asserts that plaintiff exhibited *no reliance* on anyone's statements regarding her requested leave. She chose to take the leave, not because of anyone's promises, but because the surgery was medically required to correct a potentially fatal condition.

Defendant further argues that, even if Rebecca Sandy made the alleged statement regarding protected FMLA leave, she had no authority to bind Chalfant and, therefore, plaintiff could not *reasonably* rely on Sandy's statement as a representation by her *employer*. *See Heckler*, 467 U.S. at 65 n. 21 ("[u]nder the law of agency, a principal may be bound by the acts of an agent only if that agent acted with actual or apparent authority[]") (citing Restatement (Second) Agency §§ 145, 159 (1958)). Rebecca Sandy herself was emphatic when she testified that her role at Chalfant was to do the payroll, not to handle HR functions. (R.Sandy Dep. at 630.) To the extent that any employee would be out sick, she would see the "standard form that they would have to fill out, their supervisor would fill out and the doctor would fill out," (*id.*), because that might affect the employee's pay under Chalfant's self-funded, short-term disability program. She denied any involvement with an employee's initiation of the process to obtain permission for leave, asserting that John Slaga made all decisions relating to eligibility for disability. (*Id.* at 631.) She testified that an employee "would go to their supervisor [and] … at the office they would go to John Slaga and explain the situation, and then they would be, you know, given the okay and then get the form to fill out because they couldn't be paid if they didn't have the form filled out." (*Id.*) Although she sometimes supplied the blank form, she had no

authority to grant leave. Plaintiff herself admitted that, in June or July of 2011, when she wanted assurance that she could take leave for her surgery, she asked John Slaga. (C.Weissberg Dep. at 710.)

Finally, Chalfant argues that plaintiff cannot establish the third element of an equitable estoppel claim because she has not shown any causal connection between her FMLA leave and her termination. At her deposition, plaintiff testified as follows:

> Q. On June 5, 2013 did John Slaga tell you that your employment with Chalfant was being terminated that day?
>
> A. My position as an RPG programmer was eliminated, and it was my last day to turn in my keys. That's the words that he used to me.
>
> Q. Okay. So you understood on June 5, 2013 that you had been terminated as an employee of Chalfant?
>
> A. As an RPG programmer, yes.
>
> Q. As an employee of Chalfant?
>
> A. Yes. As an employee of Chalfant because we no longer need the AS400 –
>
> * * *
>
> Q. Did he tell you the reason why your job was eliminated, why you were being terminated?
>
> A. Yes.
>
> Q. What did he tell you the reason was?
>
> A. We no longer have an AS400. So he no longer has use for a RPG programer [sic].
>
> Q. Do you have any reason, as you sit here today, to believe that that reason that John Slaga told you was untrue?
>
> A. It certainly wasn't a lie, that we didn't need a programmer.

> Q. The reason that he gave you – you agree, the reason he gave you for your termination was a truthful statement, agreed?
>
> MR. HARVEY: Objection.
>
> A. I – I know for a fact they didn't need an RPG programmer.

(C.Weissberg Dep. at 881-83.) Plaintiff also testified that she knew long before December 2012 (when she started her medical leave) that the AS400 system was being phased out and, therefore, there would be no need for the RPG programmer position. (*Id.* at 868.)[8]

Because plaintiff "has not raised a genuine dispute of a material fact as to [her] equitable estoppel argument," *Dobrowski*, 571 F.3d at 559, she has no basis on which to proceed with her otherwise barred FMLA retaliation claim against Chalfant, and this Court need not analyze any such claim. Defendant is entitled to summary judgment.

### III. CONCLUSION

For the reasons set forth herein, defendant's motion for summary judgment (Doc. No. 37) is granted and this case is dismissed.

**IT IS SO ORDERED**.

Dated: February 11, 2016

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[8] To the extent plaintiff may be inartfully asserting temporal proximity as the basis for a causal connection between any protected activity and her termination, this attempt fails. "Temporal proximity is usually not enough to show causation." *Cecil v. Louisville Water Co.*, 301 F. App'x 490, 502 (6th Cir. 2008) (citations omitted). "'Where an adverse employment action occurs very close in time after an employer learns of a protected activity,' however, temporal proximity may be enough." *Id.* (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). Courts typically measure temporal proximity "from the time an employer learns of a protected activity to the time of the adverse employment action." *Hall v. Ohio Bell Tel. Co.*, 529 F. App'x 434, 440 (6th Cir. 2013). Whether Chalfant learned of plaintiff's "protected" activity as early as 2011 (Compl. ¶ 4), or not until November 2012 (*id.* ¶ 12), either way, there is insufficient temporal proximity to link that knowledge to the decision to terminate plaintiff. *See, e.g.*, *Henderson v. Chrysler Grp., LLC*, 610 F. App'x 488, 494-95 (6th Cir. 2015) (finding no causation where there was a passage of "six to seven months" between the protected activity and the adverse employment action); *see also Krumheuer v. GAB Robins N. Am., Inc.*, No. 10-4396, 2012 WL 1700702, at * 5 (6th Cir. May 16, 2012) (concluding that a two-week interval between exercising an FMLA right and job termination was insufficient).